**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| vs. | ) | Criminal No.  17-338-01 |
| | ) | |
| | ) | |
| **LAMAR RICE,** | ) | |
| Petitioner. | ) | |

## OPINION

### I.    Introduction

Pending before the court is a motion to vacate sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 119) ("§ 2255 motion") filed by petitioner Lamar Rice ("Rice"), who pleaded guilty to the offenses charged against him in the indictment. The government opposes the motion. For the reasons set forth in this opinion, the § 2255 motion will be denied because Rice did not satisfy his burden to show he is entitled to relief.

### II.    Background

On November 13, 2017, law enforcement, relying upon one affidavit of probable cause authored by Leonard Piccini ("Piccini"), a special agent with the United States Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), (ECF No. 46-3), applied for four separate search warrants for: (a) 321 Fifth Avenue, McKeesport, Pennsylvania 15132 ("321 Fifth Avenue") (ECF No. 43-1); (b) a 2006 Nissan Frontier driven by Rice ("Rice's vehicle") (ECF No. 43-2); (c) 551 Fourth Street, Pitcairn, Pennsylvania ("Rice's residence") (ECF No. 43-3); and (d) Rice's person (ECF No. 43-4). 321 Fifth Avenue is one of three parcels in a large, three-story building located in McKeesport, Pennsylvania (the "McKeesport Building").[1] The

---

[1]     This court in the Findings of Fact and Conclusions of law explained:

application for the search warrants was made with a federal magistrate judge of this court and filed at docket number 2:17-mj-01443.[2]

Piccini in the affidavit of probable cause provided his relevant training and experience. At the time Piccini authored the affidavit of probable cause, he had approximately fourteen years of experience with the FBI and an "extensive breadth of experience and knowledge about illegal drug trafficking in the Western District of Pennsylvania." (ECF No. 43-6 ¶¶ 2-3.) Piccini was "aware of the ways in which cocaine, crack cocaine, heroin, marijuana and other drugs are distributed" and that drug traffickers "regularly" own and possess on their persons, in their residences, or in their motor vehicles firearms and other dangerous weapons. (Id. ¶¶ 7-8.) Piccini was "familiar with financial investigations involving proceeds from drug trafficker's [sic] illegal activities." (Id. at 7.) Based upon Piccini's training and experience, he was aware of the following:

> [i]ndividuals who traffic in drugs and/or commit money-laundering offenses must keep on hand large amounts of United States currency in order to maintain and finance their ongoing business[;]
> …
> [i]ndividuals who traffic in drugs and/or commit money laundering offenses often maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the ordering, sale, and distribution of their product where they can have ready access to them. This record keeping also extends to cellular devices and other electronic mediums where drug traffickers will create and

---

321 Fifth Avenue is one of three parcels in a large, three-story building located in McKeesport, Pennsylvania (the "McKeesport Building"). (ECF Nos. 43-7, 43-8.) The McKeesport Building has at least four front doors, (H.T. 11/29/2018 (ECF No. 54) at 14), and three separate addresses: (1) 315 Fifth Avenue; (2) 317 Fifth Avenue; and (3) 321 Fifth Avenue, (ECF No. 43-8).

(ECF No. 72 ¶ FOF 1.)

[2]      The court takes judicial notice of "the authenticity and existence of the docket entries, orders, and opinions publicly available" on the magistrate judge's docket. FCS Cap. LLC v. Thomas, 579 F. Supp. 3d 635, 647 (E.D. Pa. 2022).

maintain records of criminal activity[;]

... 

[i]ndividuals who traffic in drugs and/or commit money laundering offenses conceal in their residences or place of business large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of the laundering transactions, and evidence of financial transactions relating obtaining, transferring, secreting, or the spending of large sums of cash derived from engaging in laundering activities[;] and

... 

[i]ndividuals who traffic in drugs and/or commit money-laundering offenses often have in their residences or places of business, firearms and other dangerous weapons. These weapons are used to protect and secure property, which may include, but is not limited to, jewelry, books, records, United States currency, real estate property, personal property, etc.

(ECF No. 43-6 ¶¶ 9(c), (d), (e), and (k).)

Piccini in the affidavit of probable cause set forth the information obtained via law enforcement's surveillance of Rice and information about Rice provided by two confidential informants, i.e., "CS 1" and "CS 2." Piccini in the affidavit of probable cause explained that CS 1 and CS 2 had felony convictions, and CS 2 was convicted of providing false information to law enforcement. (Id. ¶¶ 12, 26.) The affidavit of probable cause also provided that: (a) CS 1 provided information verified by law enforcement and which led to "multiple narcotics seizures and two Federal Search Warrants" (Id. ¶ 12); and (b) CS 2 provided "reliable and credible" information that led to large scale drug seizures and a federal conviction. (Id. ¶ 26) Piccini in the affidavit of probable cause summarized the information received from CS 1 and CS as follows:

CS 1 and CS 2 both identify…[defendant] as a marijuana distributor. Further, they both connect…[defendant] to being the owner or individual utilizing…[321 Fifth Avenue]. The photograph provided by CS 1 indicates that…[321 Fifth Avenue] is being utilized by…[defendant] to grow and process marijuana for distribution. CS 1 and CS 2 both identify…[defendant] as either a heroin or fentanyl distributor. CS 1 observed heroin/fentanyl packing items at…[321 Fifth Avenue]. In addition, surveillance conducted by the FCI corroborates…[defendant's] connection to…[321 Fifth Avenue].

... 

CS 1 identified…[defendant's] vehicle…and surveillance corroborated CS 1's information. Furthermore, PA DMV registration of…[defendant's vehicle] linked…[defendant's vehicle] to…[defendant's residence]. Surveillance units

observed…[defendant's vehicle] at…[defendant's residence] and further observed….[defendant] exit…[defendant's residence] and depart the area in…[defendant's vehicle]. Significantly, agents observed…[defendant] carry a black gym bag from…[defendant's residence] and place it into..[defendant's vehicle] before departing the area in…[defendant's vehicle]. Additionally agents observed…[defendant] utilizing…[defendant's vehicle] to travel to Scott Electric in Lawrenceville.

(Id. ¶¶ 28-29.)

Piccini attached to the affidavit of probable cause: a photograph of the front of the McKeesport Building (ECF No. 43-6 at 13); the photograph provided by CS 1 (id. at 18), which "depicts a complex marijuana grow operation with a lighting system" and "a significant number of plants in various stages of growth[;]" and a photograph of defendant's residence (id. ¶ 14).

Piccini in the affidavit of probable cause explained that it was "likely" that defendant had evidence of his illegal grow operation in his vehicle because: (1) defendant used a lighting system and electrical supplies in his grow operation; and (2) defendant used his vehicle in furtherance of the illegal grow operation by traveling in his vehicle to Scott Electric, making a purchase in the store, and returning to his vehicle. (ECF No. 43-6 ¶¶ 29-30.) Piccini in the affidavit of probable cause concluded that it was "probable" that defendant would have evidence of his illegal drug trafficking activities on his person because: (1) CS 1 overheard defendant conducting a drug transaction via defendant's cellular telephone; and (2) "drug traffickers maintain contact information of their suppliers as well as their customers on their cellular telephone(s)…[and] on their person." (Id. ¶ 32.) Piccini in the affidavit of probable cause also concluded that it was "probable" that defendant stored "proceeds and other illegal items related to drug trafficking" at his residence. (ECF No. 43-6 ¶ 31.) Piccini explained that "large scale illegal drug traffickers prefer not to have large sums of money where their illegal drugs are located for fear of being robbed and to thwart law enforcement." (Id.) For the same reasons, "it is common for drug dealers not [to] store all…their illegal drugs, paraphernalia and owe sheets in one location." (Id.)

On November 13, 2017, the magistrate judge issued the search warrants for 321 Fifth Avenue, Rice's residence, Rice's vehicle, and Rice's person. On November 14, 2017, the government filed motions to seal search warrants requesting the court "to issue an Order directing that any and all papers filed in the…[case]…be sealed pending further Order of Court." (Case Nos. 17-mj-1440-1443, ECF No. 1 at 1.) According to the government, "the facts contained in…[the] papers pertain[ed] to matters concerning an ongoing criminal investigation and the publication of said information would compromise the investigation." (Id.) On the same day, the magistrate judge granted the government's motions and ordered "any and all papers filed in the…[cases]…SEALED until further Order of Court." (Case Nos. 17-mj-1440-1443, ECF No. 2 at 1.) All the documents filed in case numbers 17-mj-1440-1443 remained sealed until July 22, 2021.

On November 14, 2017, the four search warrants were executed by law enforcement. (ECF No. 1-1 ¶ 7.) Law enforcement recovered a key to 321 Fifth Avenue from the search of Rice's person. (Id. ¶ 7; ECF No. 14 at 5.) Law enforcement recovered from the search of Rice's residence: a box of assorted ammunition in the closet; a knit cap and jacket that law enforcement saw Rice wearing on November 13, 2017, (ECF No. 1-1 ¶ 9); "lamps, PVC pipes, irrigation supplies, fertilizers, hydroponic sensors, ventilation duct and fans"[3] (ECF No. 14 at 5); marijuana grow magazines and books (ECF No. 14 at 6); and receipts from Home Depot and "high tech gardening stores for a lot of the equipment that was in the basement" (id.). Law enforcement recovered from the search of 321 Fifth Avenue: approximately 400 marijuana plants; numerous lightings; water pumps; Duquesne Light billing statements; a suspected bag of

---

[3]     At the detention hearing in this case, Lee Niebel, a task force officer with the Federal Bureau of Investigations, described the material found in the basement of Rice's residence as "a grow operation that had been torn down and put in boxes." (ECF No. 14 at 5.)

fentanyl; "[g]rinders, sifters, mannitol, which is commonly used to cut fentanyl, empty stamp

bags, stamps" (ECF No. 14 at 9); an Amazon box with a shipping label to Rice (id.); three or

four full boxes of ammunition and piles of spent and unspent .22 caliber pistol or long rifle

casings (id. at 10-11); and bullet holes that appeared to be from a .22 caliber pistol (id. at 10).

During the search of 321 Fifth Avenue, a bystander asked law enforcement "what was going on"

because the building was his cousin's building. The bystander identified Rice as his cousin. (Id.

at 11-12.)

On November 28, 2017, a "Search Warrant Return Executed on 11/14/2017" was filed at

docket number 2:17-mj-01443. (Docket No. 2:17-mj-01443, ECF No. 5.) Docket No. 2:17-mj-

01443 remained under seal until July 22, 2021. (Docket No. 2:17-mj-01443.)

On December 12, 2017, a federal grand jury in the Western District of Pennsylvania

returned a three-count indictment against Rice charging him with:

> – count 1: possession with intent to distribute 1 or more marijuana plants on or
> about November 14, 2017, in violation of 21 U.S.C. § 841(a)(1) and
> (b)(1)(B)(vii);
>
> – count 2: maintaining a drug-involved premises from on or about January 1, 2017,
> and continuing to on or about November 14, 2017, in violation 21 U.S.C. §
> 856(a)(1); and
>
> – count 3: possession of ammunition by a convicted felon on or about November
> 14, 2017, in violation of 18 U.S.C. § 922(g)(1).

(ECF No. 17.) The charges in the indictment were based upon evidence that was obtained

pursuant to the four search warrants issued by the federal magistrate judge on November 13,

2017.

On October 26, 2018, Rice filed a motion to suppress arguing that Piccini's affidavit of

probable cause contained a falsity and did not support the issuance of the search warrants for 321

Fifth Avenue, Rice's residence, or Rice's person. Rice argued that the evidence obtained pursuant

to those three warrants should be suppressed under the Fourth Amendment to the United States Constitution. The government argued in response that Rice lacked standing to challenge the search of 321 Fifth Avenue, the search warrants were supported by probable cause, and, in any event, the good faith exception would apply to law enforcement's searches in this case. (ECF No. 45.)

On November 29, 2018, the court held a hearing with respect to Rice's motion to suppress. The government presented the testimony of Piccini and entered four exhibits into evidence. (H.T. 11/29/2018 (ECF No. 54) at 12.) Rice's counsel at the hearing on the motion to suppress conceded that he did not have standing to challenge a search of 321 Fifth Avenue. (H.T. 11/29/2018 (ECF No. 54) at 51.) Rice's counsel argued that the government did not prove that the area searched by law enforcement was 321 Fifth Avenue as opposed to 315 or 317 Fifth Avenue. (Id. at 50-51.) The court on the record explained that the motion to suppress would be denied and the court would—at a later date—issue findings of fact and conclusions of law fully explaining its decision. The court at the suppression hearing set dates for trial and pretrial proceedings.

On December 28, 2018, Rice's first counsel filed a motion to withdraw as counsel. (ECF No. 55.) The court held a hearing on the motion to withdraw counsel, granted the motion to withdraw counsel, and granted a request to continue trial. On January 14, 2019, the court appointed new counsel for Rice. On February 5, 2019, the court held a scheduling conference and set a new trial date. On February 25, 2019, the court—at the request of Rice's second counsel—continued the trial.

On May 26, 2019, Rice filed a motion for leave to file additional pretrial motions. (ECF No. 68.) In the motion, Rice's counsel sought to continue the trial date and file additional pretrial motions to address the following issues:

a. Motion to Suppress on the basis that the search of 315 Fifth Avenue, McKeesport,

7

PA 15132 was a warrantless search and no exceptions to the search warrant requirement authorized the search of that location;

b. Motion to Suppress - Search Warrant on the basis that the affidavit of probable cause filed in support thereof contains material misstatements and misrepresentations of fact including, but not limited to, averments about confidential sources and specific addresses, that render the affidavit devoid of probable cause;

c. Motion to Suppress - Search Warrant based on the lack of particularity of the search warrant and the fact that the actual search exceeded the scope of the search warrant for the location at 321 Fifth Avenue, McKeesport, PA 15132;

d. Motion for Franks Hearing to address the material misstatements and misrepresentations of fact that render the affidavits devoid of probable cause;

e. Motion to Suppress – Search of Mr. Rice's Person based on the illegal search of his person after which keys were seized from him to enter commercial property and unlawfully seize evidence; and

f. Motion to Suppress – Search Warrant for a violation of Rule 41(f)(3) of the Federal Rules of Criminal Procedure by delaying notice of the search warrant without proper authorization and only serving face sheets of the search warrant;

(ECF No. 68 at 3.) On April 1, 2019, the government filed a response in opposition to the motion to file additional pretrial motions and argued that the issues Rice sought to raise in the additional pretrial motions were already raised in the pretrial motions previously resolved by the court. (ECF No. 71.)

On April 2, 2019, the court issued the findings of fact and conclusions of law setting forth the reasons the court denied the motion to suppress on the record. (ECF No. 72.) With respect to standing, the court explained that all the evidence presented showed that the "property searched" by law enforcement was "321 Fifth Avenue," and Rice had the burden to show that he had standing to challenge the search of that property. Rice did not present any evidence to show that the areas searched by law enforcement were a part of 315 or 317 Fifth Avenue. The court concluded that under those circumstances, Rice did not satisfy his burden to show he had an objectively reasonable

expectation of privacy or subjective expectation of privacy in 321 Fifth Avenue; indeed, Rice conceded that he did not have standing to challenge a search of that property. The court also explained that even if Rice had standing to challenge the search of 321 Fifth Avenue, the magistrate judge had a substantial basis upon which to conclude there was a fair probability that evidence of Rice's illegal drug activity was taking place in 321 Fifth Avenue.

With respect to Rice's challenges to the search of his person and residence, which were conducted pursuant to the search warrants issued by the magistrate judge, the court concluded that the magistrate judge had a substantial basis upon which to conclude there was a fair probability that contraband or evidence of a crime would be found in Rice's residence and on his person. The affidavit of probable cause showed that: (1) Rice was conducting illegal activity inside 321 Fifth Avenue; and (2) evidence of that illegal activity would likely be found in Rice's residence and on his person. The court held that under those circumstances, the magistrate judge had a substantial basis upon which to conclude there was a fair probability that evidence of a crime, including Rice's illegal marijuana grow operation, would be found on Rice's person and in his residence.

With respect to whether Piccini's affidavit of probable cause contained a falsity made knowingly or recklessly that was material to the magistrate judge's finding of probable cause, this court considered whether Rice was entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Rice identified six inaccuracies in or omissions from[4] the affidavit to support his

---

[4]     The six alleged inaccuracies in or omissions from Piccini's affidavit of probable cause identified by Rice are as follows:

   (a) the building to be searched is inaccurately described because it is not a single unit
       building; rather, it is a three-story building consisting of three separate units;

   (b) the affidavit does not provide that the building has multiple entrances and exits;

   (c) there are "separate and multiple" access points to the second and third floors of the
       McKeesport Building;

arguments that Piccini (1) provided a falsity in the affidavit, i.e., the McKeesport Building had only one address of 321 Fifth Avenue as opposed to being a three-story, multi-unit building with three different addresses, and (2) omitted an accurate description of the property. This court concluded that Rice failed to satisfy his burden to show any of the six inaccuracies or omissions was material to the magistrate judge's finding of probable cause. Rice's <u>Franks</u> arguments were based upon his contention that the government failed to prove that the search of the McKeesport Building was limited to 321 Fifth Avenue for which Piccini obtained a search warrant. The court in the findings of fact and conclusions of law, however, explained that the evidence presented showed that the areas of the McKeesport Building that were searched by law enforcement were more likely than not *all* part of 321 Fifth Avenue for which Piccini obtained a search warrant. For example, Piccini's affidavit of probable cause provided, among other things, that CS 1 told law enforcement that Rice used 321 Fifth Avenue for his illegal marijuana grow operation, CS 1 provided FBI agents a photograph of the illegal grow operation inside the building, and CS 2 told law enforcement that Rice was involved in the distribution of marijuana for numerous years. The court held that—under those circumstances—even if Piccini in the affidavit *accurately* described the McKeesport Building as consisting of three separate units with multiple entrances, exits, and access points to the second and third floors and provided the names of the (actual) owner and lessee of the building, there would be probable cause to issue a search warrant for 321 Fifth Avenue, the

---

    (d) the government requested only to search 321 Fifth Avenue and not 315 or 317 Fifth Avenue;

    (e) the affidavit provides the owner of the building is CS 2 and does not identify the true owner; and

    (f) there is no information about who leased the property.

(ECF No. 43 at 2.)

unit in which CS 1 stated that Rice maintained the illegal operation.  The court held that Rice failed to show the alleged inaccuracies or omissions were material to the magistrate judge's finding of probable cause, and, therefore, Rice was not entitled to a <u>Franks</u> hearing.

With respect to the good faith exception, the court explained that Piccini's reliance upon the search warrants issued by the magistrate judge was objectively reasonable. There are four narrow situations in which the good faith exception does not apply to a law enforcement officer's reliance on a warrant. None of those situations applied to this case. The court held that to the extent Rice had standing to challenge the search of 321 Fifth Avenue, and, even if the magistrate judge lacked probable cause to issue the three search warrants in issue in this case, the good faith exception would apply and the evidence obtained pursuant to the warrants would not be excluded under the Fourth Amendment.

On April 4, 2019, the court issued an order directing the parties to file briefs addressing whether the issues raised in Rice's motion for leave to file additional pretrial motions were addressed by the court in the findings of fact and conclusions of law. (ECF No 74.) On April 9, 2019, Rice filed his brief, which provided, in pertinent part:

> Defendant, Lamar Rice (hereinafter "Mr. Rice") acknowledges that the Findings of Fact and Conclusions of Law filed by this Court addresses the new motions Mr. Rice would like to file in this case. For purposes of the record, Mr. Rice disagrees with the legal conclusions reached by this Court. Mr. Rice does, however, still maintain that a continuance of the trial is warranted to [sic] that he can evaluate his options at this point concerning whether to proceed to trial or to accept a plea agreement.

(ECF No. 76.)

On April 10, 2019, the court held a status conference during which the parties informed the court that Rice intended to change his pleas to pleas of guilty. The court denied as moot the motion to file additional pretrial motions in light of Rice's response that the court in the findings of fact and conclusions of law addressed the issues Rice intended to raise in the additional

pretrial motions. The parties informed the court that Rice intended to change his pleas of not guilty to pleas of guilty pursuant to a plea agreement.

On April 18, 2019, the court held a change of plea hearing during which Rice entered pleas of guilty to counts one, two, and three of the indictment. (ECF No. 80; H.T. 4/18/2019 (ECF No. 113).) The court placed Rice under oath, found him competent to waive his right to a jury trial and plead guilty. The court informed him about implications of his guilty pleas, the rights he was giving up by pleading guilty, and the charges against him in the indictment, including the statutory minimum and maximum penalties for those offenses. (H.T. 4/18/2019 (ECF No. 113) at 3-17.) The following colloquy took place between Rice and the court with respect to Rice's counsel:

> THE COURT: Have you had ample, meaning enough, time and opportunity to fully discuss your case with your attorney…?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you fully satisfied with your counsel's representation and the advice given to you in this case?
>
> THE DEFENDANT: Yes.

(Id. at 5.)

The court and government addressed in detail the provisions of Rice's plea agreement with the government. (Id. at 17.) The government on the record stated that "[t]here are broad appellate waivers included in…[the] plea agreement[,]" but "as a condition of the guilty plea" Rice could "take a direct appeal related to the Court's denial of his motion to suppress filed at Docket No. 43." (H.T. 4/18/2019 (ECF No. 113) at 18.) The court then reviewed in detail the appellate rights Rice was giving up by pleading guilty:

> THE COURT: Why don't we go over that paragraph. Now, Mr. Rice, do you understand that by entering into the plea agreement, you are limiting your rights to

take a direct appeal from your conviction, which means the guilty pleas, as well as your sentencing, in very significant and important ways?

THE DEFENDANT: Yes.

THE COURT: Do you understand that there are four situations in which you can take an appeal?

THE DEFENDANT: Yes.

THE COURT: Now, the first situation has to do with the Government's right to an appeal. Do you remember I went over it with you a few minutes ago? There's no limits on the Government's ability to appeal.

THE DEFENDANT: Yes.

THE COURT: If the Government were to appeal, you could also appeal. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The second situation has to do with the maximum statutory penalties. Do you recall those? I went over them a few minutes ago with you.

THE DEFENDANT: Yes.

THE COURT: If the Court were to impose a sentence that exceeded any of those applicable statutory limits, then you could take an appeal. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The third situation has to do with the sentencing guidelines. Remember I went over with you the process that the Court will go through to determine what the actual guideline sentence for your case would be?

THE DEFENDANT: Yes.

THE COURT: If the Court then were to impose a sentence that unreasonably exceeded the high end of the guideline range, you could take an appeal. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The fourth situation has to do with the issues that were raised in your motion to suppress. Do you recall those?

THE DEFENDANT: Yes.

THE COURT: So you are preserving your right to take a direct appeal from the issues raised, and if you were to prevail on that in your appeal, then you will be able to withdraw your plea of guilty and then you'd be back before this Court. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. If you do not take a direct appeal or you do not prevail in the appeal, your pleas of guilty shall stand. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you are also waiving a right to come back at a later time to attack your sentence, as well as your conviction. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: There's one exception to that and that is that you can still assert a claim of ineffective assistance of counsel. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, do you understand that by entering into this agreement, you are limiting in these very significant ways your ability to appeal or attack your convictions, which are the guilty pleas, as well as your sentence?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about the rights that you are giving up?

THE DEFENDANT: No.

THE COURT: Did you discuss the rights that you are giving up with your counsel?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you have any question about the rights that you are giving up?

THE DEFENDANT: No.

THE COURT: You are willing to give up those rights for the benefit of the plea agreement?

THE DEFENDANT: Yes, I am.

(H.T. 4/18/2019 (ECF No. 113) at 18-21.)

Rice testified that he heard and understood the terms of the plea agreement set forth on the record. (Id. at 23.) The government set forth the elements of each of the offenses charged in counts one, two, and three, and a summary of evidence it would present at trial to convict Rice of those offenses. (Id. at 24-28.) Rice agreed with the court that:

- "on November 14, 2017, [he was] in possession of the approximately 348 marijuana plants at the 5th Avenue address[;]"

- he "had other drug paraphernalia on that site, including some cutting elements for, among other drugs, cocaine[;]"

- he "had some used and unused ammunition at two different locations[;]"

- he "had a prior felony conviction[;]" and

- the ammunition he possessed "traveled in interstate commerce[.]"

(H.T. 4/18/2019 (ECF No. 113) at 28-29.)

As set forth fully on the record, Rice then pleaded guilty to counts one, two, and three of the indictment. (Id. at 29-30.)  The court concluded:

> Mr. Rice, since you acknowledge that you are in fact guilty as charged in each of Counts One, Two and  Three of the indictment, since you know about your right to a trial, since you know what the minimum and maximum possible penalties are, and since you are voluntarily pleading guilty, the Court accepts your guilty pleas and enters a judgement of guilty on each of your pleas.

> It is the finding of the Court in the case of United States vs. Lamar Rice, Criminal Action No. 17-338, that the Defendant is fully competent and capable of entering informed pleas, that the Defendant is aware of the nature of the charges and the consequences of the guilty pleas, and that each of the pleas of guilty is knowing and voluntary pleas supported by an independent basis in fact containing each of the enumerated elements of the offenses.

(Id. at 31.)

On August 8, 2019, the court held a sentencing hearing and sentenced Rice to a term of imprisonment of 60 months at each of counts one, two, and three, to concurrently run, for a total

term of imprisonment of 60 months. The court also imposed upon Rice a total term of supervised release of 4 years. (ECF No. 95.)

On August 13, 2019, Rice filed a notice of appeal and an amended notice of appeal. (ECF Nos. 97, 98.) The Third Circuit Court of Appeals affirmed the judgment of conviction in this case and explained that Rice lacked standing to challenge the search of 321 Fifth Avenue, and, that in any event, the good faith exception would apply to law enforcement's search of the McKeesport Building. (ECF No. 100-2 at 6.)

On January 28, 2022, Rice filed the pending § 2255 motion. (ECF No. 119.) On March 15, 2022, Rice filed a supplement to his motion, which requested the court consider an additional exhibit in support of his § 2255 motion. (ECF No. 121.) On July 20, 2022, the government filed a response in opposition to the § 2255 motion. On August 24, 2022, Rice filed a reply brief in support of his motion. (ECF No. 126.) The § 2255 motion having been fully briefed is now ripe to be decided by the court.

### III.   **Applicable Law with respect to § 2255 Motions**

#### A.  **Generally**

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court which imposed the sentence to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.  Under § 2255, there are four grounds upon which relief may be granted:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence "is otherwise subject to collateral attack."

16

CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 625 (4ᵗʰ ed. 2011) (quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)). Section 2255 provides as a remedy for a sentence imposed in violation of law that "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

"As a collateral challenge, a motion pursuant to [§ 2255] is reviewed much less favorably than a direct appeal of the sentence." United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014) (citing United States v. Frady, 456 U.S. 152, 167–68 (1982)). "Indeed, relief under § 2255 is available only when 'the claimed error of law was a fundamental defect [that] inherently results in a complete miscarriage of justice, and... present[s] exceptional circumstances where the need for the remedy afforded by the writ...is apparent.'" Id. (quoting Davis v. United States, 417 U.S. 333, 346 (1974) (internal quotation marks omitted)).

A district court is required to hold an evidentiary hearing on a § 2255 motion if "the files and records of the case are inconclusive as to whether the movant is entitled to relief." United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005). "[T]he court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." Id. at 545.

### B. Ineffective Assistance of Counsel

To support a claim that counsel's assistance was so defective as to amount to a deprivation of one's Sixth Amendment right to effective assistance of counsel and require reversal of a conviction, a defendant must show two things: (1) counsel's performance was deficient; and (2) counsel's deficient performance caused him prejudice. Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)); see Ross v. Dist. Att'y of the Cnty. of Allegheny, 672 F.3d 198, 210 (3d Cir. 2012). To show deficient performance, the

17

defendant must show that his or her counsel made errors so serious that his or her counsel was not functioning as the counsel guaranteed a defendant by the Sixth Amendment. Ross, 672 F.3d at 210.

"With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome." Harrington, 562 U.S. at 104. It is not enough to show that counsel's errors had "some conceivable effect on the outcome of the proceeding." Id. (citing Strickland, 466 U.S. at 693). If a court determines that defendant did not suffer prejudice, it need not determine whether the performance of the defendant's counsel was deficient. Marshall v. Hendricks, 307 F.3d 36, 87 (3d Cir. 2002) (citing Strickland, 466 U.S. at 697)). Courts should generally address the prejudice prong first. See McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993).

### C. Procedural Default

When a defendant fails to raise a claim on direct review the claim becomes procedurally defaulted. Bousley v. United States, 523 U.S. 614, 622 (1998). A defendant can only raise a procedurally defaulted claim in a habeas proceeding when the defendant "can first demonstrate either 'cause' and actual 'prejudice' ... or that [the defendant is] 'actually innocent.' " Id. (citing Murray v. Carrier, 477 U.S. 478 (1986); Wainwright v. Sykes, 433 U.S. 72, (1977); Smith v. Murray, 477 U.S. 527 (1986)).

Procedural default is an affirmative defense. Oelsner v. United States, 60 F. App'x 412, 414 (3d Cir. 2003) (citing Gray v. Netherland, 518 U.S. 152, 165–66 (1996)). The Ninth Circuit Court of Appeals recently explained:

 In the context of a § 2255 motion, procedural default is an affirmative defense. See United States v. Withers, 638 F.3d 1055, 1064 (9th Cir. 2011). That means the defendant does not bear the burden of pleading cause and prejudice in

his motion. Id. Instead, the Government bears the burden of raising the procedural default defense. Id. Once the Government establishes a defendant's procedural default, the burden shifts to the defendant to demonstrate cause and prejudice sufficient to overcome it. See Bousley, 523 U.S. at 622, 118 S.Ct. 1604. Only if the record conclusively establishes the defendant cannot overcome the procedural default, may the district court deny the petition without a hearing. *See* 28 U.S.C. § 2255(b).

United States v. Werle, 35 F.4th 1195 (9th Cir. 2022).

"Cause" legitimizes a default and it exists when a defendant can "show that some objective factor external to the defense impeded counsel's efforts to comply with the ... procedural rule." Murray, 477 U.S. at 488. Under this standard, the impediment must have prevented counsel from raising the claim. McClesky v. Zant, 499 U.S. 467, 497 (1991); Murray, 477 U.S. at 492. External impediments have been found to constitute cause when: (1) a novel legal claim exists that was not "reasonably available to counsel," Bousley 523 U.S. at 622 (citing Reed v. Ross, 468 U.S. 1, 16 (1984)); (2) the factual basis for the claim was not available to counsel, Murray, 477 U.S. at 488; (3) government officials interfered with compliance, Coleman v. Thompson, 501 U.S. 722, 753 (1991); or (4) the default occurred due to ineffective assistance of counsel in violation of the Sixth Amendment, Coleman, 501 U.S. at 752; Murray, 477 U.S. at 488.

Once a legitimate "cause" excusing the procedural default is shown, a defendant must also establish actual "prejudice." Frady, 456 U.S. at 170. To do so the defendant has "the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. (emphasis in original). This standard requires a defendant to prove that, if not for the error, the proceeding would have likely ended in a different result. Strickler v. Greene, 527 U.S. 263, 289 (1999) (citing Kyles v. Whitley, 514 U.S. 419, 434 (1995)). The Supreme Court has explained that a court should determine whether, with the

absence of the defaulted claim, defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Whitley, 514 U.S. at 434.

## IV.    Discussion

### A.  Pleading Guilty

The Third Circuit Court of Appeals has explained:

> In ascertaining the validity of a guilty plea, a court must determine whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). A defendant who pleads guilty upon the advice of counsel may attack the voluntary and intelligent nature of such a plea only by meeting the test for ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 687, 696, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

> Under the two-pronged Strickland test, the defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a "reasonable probability that but for counsel's unprofessional errors, the results of the proceeding would have been different." To establish prejudice in the guilty plea context, a defendant must show that there is a reasonable probability that but for counsel's errors he would [have] insisted on going to trial. Hill, 474 U.S. at 59, 106 S.Ct. 366.

United States v. Jesus-Nunez, 576 F. App'x 103, 105 (3d Cir. 2014); United States v. James, 928 F.3d 247, 258 (3d Cir. 2019).

Rice argues that his trial counsel provided him ineffective assistance because he did not advise Rice that entry into the plea agreement would prohibit him from raising issues on appeal to the United States Court of Appeals for the Third Circuit that were not raised before the district court. It was not Rice's entry into the plea agreement, however, that prohibited him from raising issues on appeal that were not raised before this court. The Third Circuit Court of Appeals has instructed that "'[a]bsent exceptional circumstances, issues not raised before the district court are waived on appeal.'" Taha v. Cnty. of Bucks, 862 F.3d 292, 299 (3d Cir. 2017) (quoting Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 253 (3d Cir. 2007)). That rule,

which Rice calls "procedural bar," would have applied to Rice whether he entered into the plea

agreement or not. In other words, even if Rice went to trial, "absent exceptional circumstances"

he could not raise issues on appeal that were not raised before this court. As set forth in Rice's §

2255 motion, before he entered into the plea agreement, he was aware that failure to raise issues

before this court may constitute a waiver of those issues on appeal. He wrote:

> Appointed counsels were aware that Rice did not want to plead guilty. [sic] Until
> all outstanding issues were litigated in the district court. **Rice contends that he
> tried to ensure that his rights would not be violated. [sic] By informing the
> district court of his concerns related to procedural bar. And how the facts were
> incorrect on the record.** And in turn Petitioner/Rice asserts that his plea agreement
> was not voluntary due to false pretenses and omissions of facts.

(ECF No. 119 at 3 (emphasis added).)[5]

In any event, the court during the change of plea hearing specifically asked Rice whether

he understood the appellate rights he was giving up by entering into the plea agreement, whether

he had any questions about the appellate rights he was giving up, and whether he was willing to

give up those appellate rights for the benefits of the plea agreement. Rice responded affirmatively

to each of those questions. (H.T. 4/18/2019 (ECF No. 113) at 18-21.) Rice acknowledged that he

understood that there were only four situations in which he could take an appeal. Rice told the

court that he fully discussed his case with his counsel and was fully satisfied with his counsel's

representation and advice given in this case. (Id. at 5.) Based upon the foregoing, Rice cannot show

that he was prejudiced by his counsel's alleged failure to instruct him that his entry into the plea

---

[5]      Rice attached to his § 2255 motion, a letter dated February 2, 2019. (ECF No. 119-2 at 2.)
Because Rice was represented by counsel at the time he sent the letter to this court, the court
returned the letter to Rice and forwarded a copy of the letter to his counsel. In the letter, Rice
argues, among other things, that Piccini's affidavit of probable cause contains "material omissions
and misrepresentations." (Id.) The last two lines of the front of the letter provide:
> I have only wanted to have my challenges litigated in court. Because failure to
> raise the claims in district
(Id.) Rice did not provide the court with the second page of the letter to complete the last sentence
of the first page.

agreement would prohibit him from raising issues with the court of appeals that he did not raise before this court. The § 2255 motion will be denied with respect to this issue.

## B. Failed Suppression Motion

Rice argues that his counsel provided him ineffective assistance of counsel with respect to the motion to suppress filed to challenge the government's search of 321 Fifth Avenue, Rice's residence, and Rice's person. According to Rice, his counsel should have conducted a pretrial investigation, which would have shown that Rice had standing to challenge the search of 321 Fifth Avenue. Rice also argues that his counsel should have requested a <u>Franks</u> hearing and objected to the court's finding of fact that law enforcement conducted surveillance and witnessed Rice at 321 Fifth Avenue on November 12, 2017. Each of those arguments will be addressed below.

### 1. Standing to Challenge the Search of 321 Fifth Avenue

"To invoke the Fourth Amendment's exclusionary rule, a defendant must demonstrate that his own Fourth Amendment rights were violated by the challenged search or seizure." <u>United States v. Stern</u>, 597 F.3d 540, 551 (3d Cir. 2010). The Third Circuit Court of Appeals in <u>Stern</u> explained:

> Because Fourth Amendment rights are "personal," <u>id.</u> at 139, 99 S.Ct. 421, the proponent of a motion to suppress "bears the burden of proving not only that the search ... was illegal, but also that he had a legitimate expectation of privacy in [the place searched]." <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). "The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated." <u>Mosley</u>, 454 F.3d at 253 n. 5.

<u>Id.</u> "Standing to challenge a search requires that the individual challenging the search have a

reasonable expectation[6] of privacy in the property searched,…and that he manifest a subjective expectation of privacy in the property searched….” United States v. Baker, 221 F.3d 438, 441 (3d Cir. 2000) (internal citations omitted). “Regarding the objective prong, 'we inquire whether the individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.'” United States v. Correa, 653 F.3d 187, 190 (3d Cir. 2011) (quoting Bond v. United States, 529 U.S. 334, 338 (2000)). “Regarding the subjective prong, 'we ask whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.'” Correa, 653 U.S. at 190 (quoting Bond, 529 U.S. at 338).

In this case, Rice's counsel at the hearing on the motion to suppress conceded that Rice did not have standing to challenge a search of 321 Fifth Avenue. (H.T. 11/29/2018 (ECF No. 54) at 51.) Rice's counsel argued that the government failed to prove that the area it searched was 321 Fifth Avenue, as opposed to 315 or 317 Fifth Avenue. (Id. at 50-51.) Rice in his § 2255 motions argues that his counsel did not conduct an investigation or interviews before filing the motion to

---

6       The Supreme Court has explained:

    Obviously, however, a "legitimate" expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as "legitimate." His presence, in the words of Jones, 362 U.S., at 267, 80 S.Ct., at 734, is "wrongful"; his expectation is not "one that society is prepared to recognize as 'reasonable.' " Katz v. United States, 389 U.S., at 361, 88 S.Ct., at 516 (Harlan, J., concurring). And it would, of course, be merely tautological to fall back on the notion that those expectations of privacy which are legitimate depend primarily on cases deciding exclusionary-rule issues in criminal cases. Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.

Rakas v. Illinois, 439 U.S. 128, 143 n.12 (1978).

suppress, and, if his counsel would have conducted an investigation, he would have learned that Rice had a lease agreement with respect to the entirety of the McKeesport Building, keys to the McKeesport Building, and personal mail addressed to him at 315 Fifth Avenue. According to Rice, that information would have proven that Rice had standing to contest the search of the McKeesport Building, including the search of 321 Fifth Avenue.

With respect to Rice's argument that "standing automatically attaches from the production of the lease agreement," the "lease agreement" upon which Rice relies is an **unsigned** lease for 315-317-319-321 Fifth Ave, McKeesport PA 15232, for the period June 1, 2016, **through May 31, 2017**. (ECF No. 121 at 2.) That evidence does not show that it is more likely than not that Rice had a lease for the entirety of the McKeesport Building on the date it was searched, **November 14, 2017** (more than five months after the expiration date of the unsigned lease), and, therefore, had standing to challenge the search of 321 Fifth Avenue.  With respect to Rice's arguments about having keys to the McKeesport Building and personal mail addressed to 315 Fifth Avenue, this court was aware that Rice had keys to the McKeesport Building on his person when he was seized, searched, and arrested, and that there existed utility bills for 315 Fifth Avenue in Rice's name. (ECF No. 72 ¶¶ FOF 38; COL 16.) Rice, therefore, cannot show that he was prejudiced because his counsel did not mention those items to the court in the motion to suppress or at the suppression hearing.

Based upon the foregoing, Rice cannot show that he was prejudiced by his counsel's alleged deficient performance because the counsel conceded that Rice did not have standing to challenge the search of 321 Fifth Avenue. His § 2255 motion will be denied with respect to this issue.

### 2.  Rice's Entitlement to a **Franks** Hearing

Under <u>Franks</u>, when a warrant is obtained based upon a false statement made in a supporting affidavit, the fruits of the search warrant must be excluded if the remaining material, following the excision of the falsity, is independently insufficient to support a finding of probable cause. <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 402 (3d Cir.1997). If the falsity is based upon an omission rather than a misstatement of facts, the court must remove the falsehood by supplying the omitted information to the original affidavit, and subsequently determining if the affidavit with the added information contains sufficient probable cause. <u>Id.</u> at 399.

To obtain a <u>Franks</u> hearing, the defendant[7] must first make a "substantial preliminary showing" that (a) the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, and (b) the false statement is material to the finding of probable cause. <u>Yusuf</u>, 461 F.3d 374, 383. If that showing is made, and a hearing is granted, defendant must prove by a preponderance of the evidence that: (a) the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (b) such statements or omissions were material, or necessary, to the probable cause determination. <u>Id.</u>

---

[7]     The Supreme Court explained the government's burden as follows:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

<u>Franks</u>, 438 U.S. at 171-72.

To determine whether deficiencies in the affidavit are "material," the court must follow the following procedure:

> When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit. In contrast, when faced with an omission, the court must remove the "falsehood created by an omission by supplying the omitted information to the original affidavit."

Id. at 384 (quoting Sherwood, 113 F.3d at 400). If probable cause still exists after the affidavit has been "corrected," then the deficiencies are not material. Id.

To make a substantial preliminary showing, defendant must present more than conclusory statements or arguments. Id. at 383 n. 8 ("In order to make this preliminary showing, the defendant cannot rest on mere conclusory allegations or a 'mere desire to cross-examine,' but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses.").

The Court of Appeals for the Third Circuit has explained the "substantial preliminary showing" required by the defendant as follows:

> To obtain a Franks hearing, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause."…To meet this threshold, a challenger must present more than conclusory statements that the affidavit contains false statements or omissions.…The challenger must specifically identify allegedly false statements or omissions in the affidavit and provide a statement of reasons supporting the argument….The challenger must also provide an offer of proof or give a satisfactory explanation for the absence of proof….Sworn affidavits or reliable statements from witnesses are examples of offers of proof sufficient to satisfy the substantial preliminary showing…. When demonstrating that the affiant omitted a material fact or included a false statement with the requisite mens rea, it is insufficient to prove the affiant acted with negligence or made an innocent mistake….If the challenger provides sufficient proof and obtains a Franks hearing, the challenger must prove by a preponderance that (1) the affiant made false statements or omissions intentionally, knowingly, or with reckless disregard for the truth, and (2) such statements were material to the probable cause determination….If the challenger satisfies this burden, we will excise the false statements and omissions from the affidavit and assess whether the corrected affidavit establishes probable cause.

26

United States v. Heilman, 377 F. App'x 157, 177 (3d Cir. 2010) (citations omitted).

Rice argues that his counsel's performance was deficient because he did not request a Franks hearing based upon inaccuracies in or omissions from Piccini's affidavit of probable cause. Specifically, Rice argues that he was entitled to a Franks hearing with respect to: (1) Piccini's erroneous statement that CS 2 was the owner of the McKeesport Building; and (2) Piccini's erroneous statement that he ran a "DMV check" on Rice's vehicle to corroborate information provided by CS 1, (ECF No. 43-6 ¶¶ 4, 29).

This court in the findings of fact and conclusions of law considered whether Rice was entitled to a Franks hearing based upon the following alleged inaccuracies in or omissions from the affidavit:

(a) the building to be searched is inaccurately described because it is not a single unit building; rather, it is a three-story building consisting of three separate units;

(b) the affidavit does not provide that the building has multiple entrances and exits;

(c) there are "separate and multiple" access points to the second and third floors of the McKeesport Building;

(d) the government requested only to search 321 Fifth Avenue and not 315 or 317 Fifth Avenue;

(e) the affidavit provides the owner of the building is CS 2 and does not identify the true owner; and

(f) there is no information about who leased the property.

(ECF No. 72 ¶ COL 45.) The court explained that each of the foregoing inaccuracies or omissions was not *material* to the magistrate judge's finding of probable cause, and, therefore, even if they were knowing or reckless inaccuracies or omissions by Piccni, Rice was not entitled to a Franks hearing. (ECF No. 72 ¶¶ COL 36-48.) This court specifically addressed the typographical error in the affidavit of probable cause identifying CS 2 as the owner of the McKeesport Building. The

court concluded that Piccini's typographical error was not made recklessly or warranted exclusion of the evidence obtained pursuant to the search warrants issued in this case. (ECF No. 72 ¶¶ 62-70.) The court explained that Piccini credibly testified that the identification of CS 2 as the owner of the McKeesport Building was a typographical error, and, even if Piccini correctly identified the owner of the McKeesport Building in the affidavit of probable cause, the magistrate judge would have a substantial basis upon which to conclude there was fair probability that evidence of Rice's crimes was located inside 321 Fifth Avenue. (Id.) Based upon the foregoing, the court cannot conclude that Rice's counsel's performance was deficient because the counsel did not request a Franks hearing with respect to this issue. Even if the counsel's performance was deficient, Rice cannot show he was prejudiced by the performance because—for the reasons set forth in the findings of fact and conclusions of law—Rice was not entitled to a Franks hearing with respect to Piccini's typographical error identifying CS 2 as the owner of the McKeesport Building.

Rice next argues that Piccini's statement that he "conducted a Pennsylvania DMV check on the 2006 Nissan Frontier…[b]earing a VIN and plate number being registered to a Julie George at 551 Fourth…[S]treet is false and inaccurate." (ECF No. 119 at 8.) According to Rice, Piccini made the false statement "to intentionally mislead the magistrate into believing that the DMV check was an act of corroboration of C.S.#1's tip information." (Id.) The affidavit of probable cause provides that:

- CS 1 advised law enforcement that Rice drove a 2006 Nissan Frontier truck with a Pennsylvania license plate number of ZKW-2601 ("Rice's vehicle") (ECF No. 43-6 ¶ 29)

- a query of the Pennsylvania Department of Motor Vehicle ("DMV") database provided that Rice's vehicle was registered to Julia T. George at 551 Fourth Street, Pitcarin, Pennsylvania 15140, i.e., the DMV query connected Rice's vehicle to Rice's residence (id. ¶ 18);

- surveillance of Rice corroborated CS 1's information that the 2006 Nissan Frontier was Rice's vehicle (id. ¶¶ 20-25);

28

– law enforcement saw Rice's vehicle at Rice's residence (id. ¶ 29);

– law enforcement saw Rice exit his residence with a black gym bag and enter his vehicle with the black gym bag (id.); and

– law enforcement saw Rice drive his vehicle to an electric store (id.).

In support of Rice's argument that Piccini did not conduct a DMV query of his vehicle, Rice attached to his § 2255 motion the title and registration of his vehicle. The documents relied upon by Rice show that: (1) the vehicle with the same license plate identified by Piccini is a 2006 Nissan vehicle; (2) the Nissan is registered to Julia George ("George"); and (3) George's address is "551 Fourth St[,]" i.e., Rice's address. (ECF No. 119-4 at 2-4.)[8] In other words, the information provided in the title and registration documents corroborates the information Piccini obtained from the DMV query as set forth in the affidavit of probable cause. The title and registration do not offer any support to Rice's argument that Piccini's statement that he conducted a DMV query of Rice's vehicle was false; indeed, the documents do not identify the model of the Nissan, i.e., Frontier or Titan, to show that CS 1's tip was erroneous in the first instance. Under those circumstances, Rice has not made any showing that Piccini's statement in the affidavit that he conducted a DMV query of Rice's vehicle was false. Rice, therefore, cannot show that his counsel's performance was

---

[8]     There is a discrepancy between the vehicle identification number ("VIN") provided for in Piccini's affidavit of probable cause ("1N6B07A26N520438"), ECF No. 43-6 ¶ 4, and the title and registration provided by Rice ("1N6BA07A26N520438"), ECF No. 119-4 at 2-4), i.e., the VIN provided by Rice contains the letter "A" between the "B" and "0"—otherwise the VINs match. The license plate number provided for in the affidavit of probable cause and the title and registration provided by Rice, however, are the same, i.e., "ZKW2601." (ECF No. 43-6 ¶ 4; ECF No. 119-4 at 2-4.) The affidavit of probable cause, title, and registration also all identify George as the owner of the vehicle with Rice's address as the registered address. (ECF No. 43-6 ¶¶ 4, 18; ECF No. 119-4 at 2-4.) Under those circumstances, even if the affidavit of probable cause was corrected with respect to the VIN number, the magistrate judge would have had a substantial basis upon which to conclude that there was a fair probability that evidence of a crime would be found in the places searched, i.e., the corrected VIN number was not material to the determination of probable cause.

deficient because he did not request a <u>Franks</u> hearing based upon Piccini's allegedly false statement that he conducted a DMV query of Rice's vehicle to corroborate the information provided by CS 1.

Based upon the foregoing, Rice failed to make any showing that his counsel's performance was deficient because he did not request a <u>Franks</u> hearing based upon (1) Piccini's erroneous statement that CS 2 was the owner of the McKeesport Building, or (2) Piccini's allegedly false statement that he ran a DMV query on Rice's vehicle. The § 2255 motion will be denied with respect to this issue.

### 3. Law Enforcement's Surveillance of Rice at 321 Fifth Avenue

Rice in his § 2255 motion argues that his counsel was deficient because he did not object to this court's finding of fact—based upon Piccini's testimony at the suppression hearing[9]— that

---

[9]     The court found that Piccini conducted surveillance and saw Rice at 321 Fifth Avenue on November 12, 2017, based upon the following excerpt of the examination of Piccini at the suppression hearing in this case:

> Q Now, before you actually drafted and executed the search warrant, you conducted surveillance at this location; correct?
>
> A Yes.
>
> Q And when I say, this location, I mean, 321 Fifth Avenue, McKeesport; correct?
>
> A Yes.
>
> Q Could you, could you detail for the Court the different surveillance observations you made of Mr. Rice or anyone else entering or leaving access points within that building?
>
> A Specifically, on the evening prior to the search warrant, I observed Mr. Rice's Nissan Frontier in the parking lot across the street. I was also in the same parking lot as the vehicle.

(H.T. 11/29/2018 (ECF No. 54) at 12.) On November 13, 2017, law enforcement relying upon one affidavit of probable cause authored by Piccini (ECF No. 46-3) applied for the four separate search warrants. On the same day, a federal magistrate judge signed and issued each of the four

on November 12, 2017, i.e., the day before the search warrant was issued in this case, Piccini

observed Rice at 321 Fifth Avenue. The government appears to concede that—despite Piccini's

testimony at the suppression hearing—the surveillance by Piccini of Rice at 321 Fifth Avenue

occurred on November 13, 2017, and not November 12, 2017. (ECF No. 125 at 16 n.11.) Even if

Rice could show that his counsel's performance was deficient because he did not object to the

court's finding of fact with respect to the date of surveillance, Rice cannot show that he was

prejudiced by his counsel's performance. The court did not rely upon the date on which the

surveillance of Rice at 321 Fifth Avenue took place to conclude that the magistrate judge had a

substantial basis upon which to find that there was a fair probability that evidence of a crime

would be found at the locations searched.[10] The court's determination about the sufficiency of

the affidavit of probable cause focused only upon the information contained in Piccini's

affidavit, which did not provide that Rice was surveilled at 321 Fifth Avenue on November 12,

2017. (ECF No. 72 ¶¶ 25-35.)

      The finding of fact with respect to Rice being surveilled at 321 Fifth Avenue—as

opposed to the date on which the surveillance took place—was relevant to the court's standing

analysis and determination that the location searched was 321 Fifth Avenue as opposed to 315 or

317 Fifth Avenue; indeed, the court explained that while Rice was under surveillance, he exited

the door of the McKeesport Building labeled "321." (ECF No. 72 ¶ FOF 23.) The date on which

that surveillance took place, however, was not material to the court's decision to deny the motion

---

search warrants. (ECF Nos. 43-1 at 1; 43-2 at 1, 43-3 at 1, 43-4 at 1.) The search warrants were
executed on November 14, 2017. (ECF No. 1-1 ¶ 7.)

[10]     As the court explained in the findings of fact, the Piccini's affidavit provided "information
obtained via the surveillance of defendant and information about defendant provided by CS 1 and
CS 2" (ECF No. 72 ¶ FOF. 30.); indeed, Piccini's affidavit of probable cause details law
enforcement's surveillance of Rice conducted on November 1, 2017. (ECF No. 43-6 ¶¶ 19-25.)

to suppress for lack of standing. Under those circumstances, if Rice's counsel objected to the court's finding of fact with respect to the date on which Rice was surveilled at 321 Fifth Avenue and the court sustained the objection or modified its findings of fact to reflect the correct date, the outcome of the motion to suppress would be the same; the court would have denied the motion. Under those circumstances, even if Rice's counsel's performance was deficient because he did not object to the court's finding of fact, Rice was not prejudiced by his counsel's performance. The § 2255 motion will be denied with respect to this issue.

### C. Challenges to Service of Search Warrant Attachments and Affidavits

The Third Circuit Court of Appeals has explained:

> To be constitutionally sound, search warrants must state probable cause and "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; see Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir.1998), cert. denied, 528 U.S. 1079, 120 S.Ct. 797, 145 L.Ed.2d 672 (2000). The particularity requirement is intended "to prevent the police from undertaking a general, exploratory rummaging through a person's belongings." United States v. Johnson, 690 F.2d 60, 64 (3d Cir.1982)(citing Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)), cert. denied, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983).

Bartholomew v. Pa., 221 F.3d 425, 428 (3d Cir. 2000). In Bartholomew, the plaintiffs filed an action under 42 U.S.C. §§ 1983 and 1985 arguing that law enforcement officers violated their Fourth Amendment rights in an underlying state-court criminal case because their residence and business were searched, and items were seized, without lawful search warrants or probable cause. Id. at 427. In the underlying state court criminal case, a magistrate judge issued the search warrants for the federal-plaintiffs' residence and business, both of which incorporated by reference an exhibit that listed the items to be seized pursuant to the search warrants. After the search warrants were issued, but before they were executed, the government requested that the exhibit listing the items to be seized pursuant to the search warrants be placed under seal. Id. at 427. The court granted the request and placed the affidavit of probable cause and the exhibit

listing the items to be seized under seal. Id. When the search warrants were executed, law enforcement did not provide the federal-plaintiffs the exhibit referenced in the search warrants that listed the items to be seized. Id. The federal-plaintiffs in the state-court criminal case filed a petition for the return of their property. The state court judge "found that the warrants were unlawful because they neither named nor described with particularity the property to be seized and the list of items to be seized was sealed." Id. Most of the items seized from the federal-plaintiffs were returned to them and no criminal charges were filed against them. Id.

The federal-plaintiffs filed their lawsuit under §§ 1983 and 1985 against the law enforcement officers who executed the search warrants. One of the law enforcement officers filed a motion for summary judgment. The district court granted the motion for summary judgment on all claims except for the claim "that because the list of items to be seized was sealed and, thus, the warrants failed to identify those items, the warrants lack the particularity required by the Fourth Amendment." Bartholomew, 221 F.3d at 427. The district court found that the law enforcement officer violated the state court defendants' right "to be free from an unlawful search and seizure." Id. at 427. The district court explained that material issues of fact remained about the "objective reasonableness of…[the law enforcement officer's] actions," and, therefore, "summary judgment on the basis of qualified immunity would be denied." Id. The law enforcement officer appealed the district court's decision "arguing that the District Court erred in concluding that he violated a clearly established constitutional right." Id.

The Third Circuit Court of Appeals, addressing the Fourth Amendment's particularity requirement, explained:

> Clearly, a problem at least potentially arises when much of the requisite information for a warrant is found in a document other than the warrant itself because, on the face of the warrant, the necessary particularity will be lacking. We have concluded, however, along with most courts, that "[w]hen a warrant is accompanied by an affidavit that is incorporated by reference, the affidavit may be

used in construing the scope of the warrant." <u>Johnson</u>, 690 F.2d at 64–65. The requirement that affidavits accompany warrants which themselves lack particularity serves two purposes: one, to limit the agents' discretion as to what they are entitled to seize; and two, to inform the subject of the search what can be seized. <u>See</u> <u>United States v. McGrew</u>, 122 F.3d 847, 849 (9th Cir.1997).

Here, the warrant did in fact reference the list of items to be seized as Exhibit A and, thus, "incorporated" the list of items. That exhibit, however, was sealed. Before us, then, is the unusual, and largely heretofore undiscussed, question of whether an incorporated but sealed list of items can be used in construing the scope of the warrant in order to determine whether the warrant will pass constitutional muster. What little case law there is suggests it would not. As the <u>McGrew</u> Court observed, "[i]f the government wishes to keep an affidavit under seal"—in order to protect witnesses, for example—"it must list the items it seeks with particularity in the warrant itself. It is the government's duty to serve the search warrant on the suspect, and the warrant must contain, either on its face or by attachment, a sufficiently particular description of what is to be seized." <u>Id.</u> at 850.

<u>Id.</u> at 428-29.

The court of appeals agreed with the district court "that because [the exhibit with] the list [of items to be seized] was sealed, the warrants themselves were devoid of the requisite specificity and, thus, that the Fourth Amendment was violated." <u>Id.</u> at 429. The court of appeals explained, however, that that "the Fourth Amendment right at issue under the novel facts of this case was [not] clearly established at the time those warrants were executed[,]" and, therefore, the law enforcement officer who did not provide the federal-plaintiffs the exhibit to the search warrants at the time of the searches was entitled to qualified immunity from suit. <u>Id.</u> The court of appeals held:

We now make clear what was heretofore not "sufficiently clear" and hold that, generally speaking, where the list of items to be seized does not appear on the face of the warrant, sealing that list, even though it is "incorporated" in the warrant, would violate the Fourth Amendment. While we find it difficult to hypothesize a justification for sealing a list of items, and Agent Fraley was unable to do so, we leave open the possibility that there can be that rare case in which sealing may be thought necessary. Should that case arise, however, the list should not be sealed in the absence of clearly stated, and compelling, reasons.

Because the issue of whether one has a constitutional right to be free from a search pursuant to a warrant based on a sealed list of items had not been addressed

by this or, indeed, by virtually any other court, it cannot be said that Agent Fraley violated a "clearly established constitutional right." Because, therefore, Agent Fraley is entitled to qualified immunity, we will reverse the order of the District Court denying his motion for summary judgment.

Bartholomew, 221 F.3d at 429–30.

Four years after the court of appeals decided Bartholomew, the Supreme Court of the United States decided Groh v. Ramirez, 540 U.S. 551, 553 (2004). In Groh, the law enforcement officer conducted a search of Ramirez's home, pursuant to a search warrant that failed to list the person or items to be seized. The application for the search warrant presented to the magistrate judge specifically listed the items the law enforcement officer intended to seize. The Supreme Court explained:

> Although the application particularly described the place to be searched and the contraband petitioner expected to find, the warrant itself was less specific; it failed to identify any of the items that petitioner intended to seize. In the portion of the form that called for a description of the "person or property" to be seized, petitioner typed a description of respondents' two-story blue house rather than the alleged stockpile of firearms….The warrant did not incorporate by reference the itemized list contained in the application. It did, however, recite that the Magistrate was satisfied the affidavit established probable cause to believe that contraband was concealed on the premises, and that sufficient grounds existed for the warrant's issuance.

Id. at 554–55 (footnote omitted).

After the law enforcement officer executed the search warrant, he provided Ramirez a copy of the search warrant but not a copy of the application for the search warrant. The day after the search, the law enforcement officer faxed Ramirez's attorney the page of the application for the search warrant that listed the items to be seized. Id. at 555. Ramirez sued the law enforcement officer, among others, pursuant to § 1983. Ramirez argued, among other things, that the search warrant violated the Fourth Amendment. The district court granted summary judgment to the law enforcement officer concluding, among other things, that the failure to list the items to be searched on the search warrant, rather than in the application for the search

warrant, amounted to a "mere typographical error." Id. at 555-56. The court of appeals affirmed the judgment of the district on all claims except for Ramirez's claim that the search warrant violated the Fourth Amendment because it did not list the items to be seized. The court of appeals explained that the search warrant violated the particularity requirement of the Fourth Amendment. The court of appeals held that the law enforcement officer was not entitled to qualified immunity because he was the leader of the search and the search warrant had obvious defects of which he should have been aware. Id. at 556.

The Supreme Court concluded that the search warrant was "plainly invalid" because it did not provide any description of the items law enforcement intended to seized during the search. Id. The Court explained that the fact that the application described the items to be seized did not save the warrant because the Fourth Amendment "requires particularity in the warrant, not in the supporting documents." Id. at 557. The Court rejected the law enforcement officer's that his conduct was otherwise reasonable because the magistrate judge issued the search warrant, he orally explained the items he intended to be seized to Ramirez before the search, and law enforcement did not seize items beyond the list provided in the application for the search warrant. The Court explained: "the warrant did not describe the items to be seized *at all.* In this respect the warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law." Id. at 558. The Supreme Court held that the law enforcement officer was not entitled to qualified immunity because the search warrant was so obviously lacking and in violation of the Fourth Amendment's particularity requirement that it amounted to "no warrant at all[,]" and, under those circumstances, the executing officer could not *reasonably* presume the search warrant to be valid. Id. The Court affirmed the court of appeals' decision on that basis. Id.

The court of appeals in United States v. Wright, 493 F. App'x 265, 266 (3d Cir. 2012) ("Wright I"), and United States v. Wright, 777 F.3d 635 (3d Cir. 2015) ("Wright II"), considered whether the good faith exception may apply to the Fourth Amendment's search warrant requirement of particularity, i.e., whether law enforcement's failure to adhere to the particularity requirement of the Fourth Amendment *always* requires the exclusion of evidence seized pursuant to the unlawful search warrant. In Wright I and Wright II, the search warrant incorporated by reference the affidavit of probable cause, which listed the items to be seized. The affidavit of probable cause, however, was placed under seal at the government's request after the search warrant was issued. Wright II, 777 F.3d at 637. The district court held that the search warrant was facially invalid because the affidavit of probable cause that described the items to be seized was placed under seal. The district court concluded that "the good-faith exception to the exclusionary rule could never excuse reliance on a facially invalid warrant[,]" and, therefore, ordered the suppression of the evidence obtained pursuant to the facially invalid warrant. Wright II, 777 F.3d at 638. The case was appealed to the court of appeals, and, in Wright I, the court of appeals vacated the district court's judgment and remanded the case. The court of appeals explained under recent Supreme Court case law, i.e., Herring v. United States, 555 U.S. 135, 129 (2009), suppression of evidence is not warranted unless the law enforcement officer's conduct was "at least grossly negligent." Wright II, 777 F.3d at 638. On remand, the district court found that the law enforcement's officer failure to provide the defendant the entirety of the search warrant was a "simple mistake" that did not confer any benefit to the government and, therefore, suppression of the evidence was not warranted in the case. Id. The motion to suppress was denied on that basis and a jury found the defendant guilty of the charges in the indictment. Id. The defendant subsequently appealed his conviction to the court of appeals. Id.

The court of appeals in Wright II explained:

> [W]hen a warrant is "so facially deficient that it fail[s] to particularize ... the things to be seized," the officers involved are usually at least "grossly negligent" and cannot avail themselves of the good-faith exception. <u>United States v. Tracey</u>, 597 F.3d 140, 151 (3d Cir.2010). We recently clarified in <u>United States v. Franz</u>, however, that this is not a categorical rule. 772 F.3d at 144–47. "[I]n examining the totality of the circumstances, we consider not only any defects in the warrant but also the officer's conduct in obtaining and executing the warrant and what the officer knew or should have known." <u>Id.</u> at 147. Thus, even if a warrant is facially invalid, an assessment of the officers' culpability and the value of deterrence may counsel against suppression.

<u>Wright II</u>, 777 F.3d at 639. With respect to "gross negligence" and "mere negligence," the court of appeals in <u>Wright II</u> explained:

> This Court has explained that gross negligence has "been described as the want of even scant care and the failure to exercise even that care which a careless person would use." <u>Fialkowski v. Greenwich Home for Children, Inc.</u>, 921 F.2d 459, 462 (3d Cir.1990) (internal quotation marks omitted). By contrast, ordinary negligence "means no more than a failure to measure up to the conduct of a reasonable person." <u>Id.</u> (internal quotation marks omitted).

<u>Wright II</u>, 777 F.3d at 640.

To analyze a police officer's culpability, the court may consider whether: (1) the officer sought and obtained a valid search warrant; (2) the officer acted in consultation with federal prosecutors; (3) the police officer's conduct showed an intention to conceal the information that was not provided to the defendant; (4) the constitutional violation was recurring or systematic, rather than an isolated mistake by an inexperienced agent; and (5) the officer had any reason or excuse for failing to satisfy the particularity requirement, e.g., unclear language in a magistrate judge's order sealing the attachments referenced in the face sheet. <u>Wright II</u>, 777 F.3d at 639.

In evaluating the value of deterrence, the court should consider: "(1) the extent to which the violation in this case undermined the purposes of the Fourth Amendment and (2) what the Government gained from the violation." <u>Id.</u> at 640. The court of appeals explained the purposes of the particularity requirement as follows:

First, it provides "written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned." Groh, 540 U.S. at 560, 124 S.Ct. 1284; see also Tracey, 597 F.3d at 146. Second, it prevents "general searches" by confining the discretion of officers and authorizing them to seize only particular items. Tracey, 597 F.3d at 146. Third, it "informs the subject of the search 'of the lawful authority of the executing officer, his need to search, and the limits of his power to search.' " Id. (quoting Groh, 540 U.S. at 561, 124 S.Ct. 1284).

Id. at 640.

Applying the foregoing law to the facts of the case, the court of appeals in Wright II agreed with the district court that the law enforcement officer's conduct in the case did not amount to gross negligence and suppression of the evidence was not warranted in the case. The court of appeals explained that the law enforcement's conduct did not undermine the purpose of the particularity requirement because: (1) the law enforcement officer oversaw the search and ensured the search did not extend beyond the bounds of the search warrant; and (2) the magistrate judge at the time the search warrant was issued had probable cause to issue the search warrant, which properly incorporated by reference the affidavit of probable cause that described the items to the seized. The court of appeal acknowledged that the law enforcement officer's conduct undermined the particularity requirement in one regard, i.e., at the time of the search the officer did not provide the defendant—either in writing or verbally—a list of the items to be seized. The court of appeals questioned the importance of providing the defendant a list of the items to be seized at the time of the search because "'neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41' requires 'the executing officer [to] present the property owner with a copy of the warrant before conducting his search." Wright II, 777 F.3d at 641 (quoting United States v. Grubbs, 547 U.S. 90, 98–99 (2006)).

Under those circumstances, the court of appeals could not discern how the defendant was harmed by the law enforcement's conduct because the defendant had ample opportunity to

challenge the search warrant after it was executed. Id. The court of appeals concluded that the government did not benefit from the law enforcement officer's conduct:

> Even if the list of items to be seized had been present at the scene, the agents would have collected precisely the same evidence, and Wright would have been unable to stop them. The violation in this case had no impact on the evidence that could be deployed against Wright at trial.

Wright II, 777 F.3d at 641. The court of appeals affirmed the district court's denial of the motion to suppress and its holding that the law enforcement officer "was not sufficiently culpable for the costs of suppression to outweigh its benefits." Id.

In United States v. Graves, 751 F. App'x 161, 162 (3d Cir. 2018), the defendant—a convicted armed bank robber—filed a § 2255 motion arguing that his counsel provided him ineffective assistance because he did not file a motion to suppress to challenge the government's execution of the search warrant used to seize evidence with which the defendant was convicted. The court denied the § 2255 motion, but issued a certificate of appealability with respect to "whether trial counsel was ineffective for failing to move to suppress evidence found in the search of the…residence…in light of the Government's failure to list the items to be seized or incorporate a list of such items in the search warrant." Id. at 162-63.

On appeal, the court of appeals—in light of its decision in Wright II—vacated the district court's order denying the § 2255 motion with respect to the suppression issue and remanded the case for the district court to conduct an "evidentiary hearing on the culpability of the officer who prepared the warrant application." Id. at 163. The court of appeals explained:

> We determined that, pursuant to Wright II, in which we clarified that "even if a warrant is facially invalid, an assessment of the officers' culpability and the value of deterrence may counsel against suppression," 777 F.3d at 639, the District Court erred in concluding that a motion to suppress would have been granted without making findings of fact concerning the officer's culpability. Additionally, we ruled that the District Court incorrectly determined that, had the motion to suppress been granted, Graves failed to show prejudice.

Id.

On remand in <u>Graves</u>, the district court held the evidentiary hearing and denied the §

2255 motion because it found that the police officer's failure to provide the defendant a

particularized list of the items to be searched constituted mere negligence, which did not warrant

the application of the exclusionary rule in the case. Under those circumstances, the defendant

could not show he was prejudiced by his counsel's allegedly deficient performance. <u>Id.</u>

The defendant filed an application with the court of appeals for a certificate of

appealability with respect to the district court's findings on remand, which the court of appeals

granted. The court of appeals after review of the evidence from the evidentiary hearing on the

officer's culpability agreed with the district court that the officer's failure to comply with the

particularity requirement of the Fourth Amendment was a "mistake" and did not amount to

"gross negligence." <u>Id.</u> at 165. The court of appeals explained:

> We agree with the District Court that the testimony of Vincent confirms that
> the failure of the search warrant to reference Attachment B was a mistake, likely
> amounting to negligence, but not more culpable behavior. Vincent worked in
> consultation with the United States Attorney's Office to draft the warrant and
> supporting documents, and ultimately obtained approval of the warrant by the
> Magistrate Judge. <u>See</u> <u>Tracey</u>, 597 F.3d at 152–53. There is no evidence to suggest
> that Vincent had the intention of concealing the information contained
> in Attachment B, since it was provided in the warrant package to the Magistrate
> Judge, and left at the residence. <u>See</u> <u>Franz</u>, 772 F.3d at 147–48. Additionally, there
> is no evidence to establish that this was a recurring or systemic violation instead of
> an isolated mistake by the officer. <u>See</u> <u>Herring</u>, 555 U.S. at 144, 147–48, 129 S.Ct.
> 695. Graves argues that Vincent's position as a well-trained and experienced agent
> makes him more culpable, and he is correct that "an officer's knowledge and
> experience bears on whether it was objectively reasonable for that officer to believe
> that the search was legal." <u>Wright II</u>, 777 F.3d at 639 (citation and internal
> quotation marks omitted). However, it does not directly follow that Vincent's
> mistake amounts to gross negligence. <u>See</u> <u>id.</u> at 640. Instead, considering the
> totality of the circumstances, we cannot say that Vincent acted deliberately,
> recklessly, or with gross negligence…'<u>See</u> <u>id.</u> at 639 (citing <u>Franz</u>,

<u>Graves</u>, 751 F. App'x at 165.

With respect to whether the officer's conduct undermined the purposes of the Fourth

Amendment, the court of appeals agreed with the district court's analysis and explained:

> The first purpose, to provide written assurance that the magistrate judge
> found probable cause to support the warrant application, was likely undermined by
> the officer's conduct since there was no evidence provided to show that the
> Magistrate Judge examined Attachment B and agreed that there was probable cause
> to seize each item identified on the list. However, the remaining purposes of the
> Fourth Amendment were not undermined by the officer's conduct. The search was
> sufficiently constrained so as not to violate the particularity requirement's purpose
> of preventing general searches, and the officer sufficiently informed the subject of
> the legal authority of the search, the need to search, and the limits of the search.
> Finally, it is clear that the Government did not gain anything as a result of the
> violation, since, had Attachment B been incorporated in the warrant, the same
> evidence would have been presented at trial.

Id. at 165. The court of appeals affirmed the district court's order denying the § 2255 motion and

explained:

> We conclude that the District Court was correct to hold that the officer was not
> sufficiently culpable for the costs of suppression to outweigh its benefits and that
> a motion to suppress the evidence seized during the search would therefore be
> denied under current law. As noted by the District Court, "[t]he Fourth Amendment
> violation in this case was the result of a 'misstep.' " Dkt # 285, at 19 (quoting Franz,
> 772 F.3d at 149). Therefore, Graves has failed to show that he was prejudiced by
> counsel's conduct, since counsel's performance did not deny him of a substantive
> or procedural right. See Williams v. Taylor, 529 U.S. 362, 392–93, 120 S.Ct. 1495,
> 146 L.Ed.2d 389 (2000).

Graves, 751 F. App'x at 165–66.

Here, the search warrants for Rice's person, residence, and vehicle incorporated by

reference Attachment A and Attachment B. Attachment A described the property to be searched.

Attachment B described the items to be seized. The search warrant did not otherwise describe the

property to be searched or items to be seized. Rice alleges that the law enforcement officers who

executed the search warrants on his person, residence, and vehicle provided him only the face

sheets of the search warrants at the time of the searches, i.e., they did not provide him

Attachment A or Attachment B.

The government does not refute those allegations. Docket Nos. 2:17-mj-1440-1443 supports Rice's position that—on November 14, 2017, when the search warrants were executed—the attachments to those search warrants which described the property to be searched and the items to be seized were under seal. Accepting Rice's allegations as true, the search warrants for his person, residence, and vehicle violated the particularity requirement of the Fourth Amendment when they were executed because the face sheets did not describe the property to be searched or the items to be seized and the attachments were under seal.[11]

---

[11]     Accepting Rice's allegations as true with respect to the search warrants for his person, residence, and vehicle, law enforcement violated Federal Rule of Civil Procedure 41(f)(1)(C) when they served upon Rice incomplete copies of the search warrants. Rule 41(f)(1)(C) provides:

> The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

FED. R. CRIM. P. 41(f)(1)(C). Courts have recognized that pursuant to Rule 41(f)(1)(C), law enforcement must provide a *complete* copy of the search warrant to the person whose property is searched pursuant to the warrant. United States v. Manaku, 36 F.4th 1186, 1189 (9th Cir. 2022) (explaining that law enforcement violated Rule 41(f)(1)(C) when it provided only the face sheet of the warrant to the defendant and did not provide the defendant the attachments to the warrant, which were referenced in the warrant.).

The Third Circuit Court of Appeals has explained that when a defendant argues that the evidence was obtained pursuant to a search warrant in violation of Rule 41, a four-step process should be used to determine whether suppression of the evidence is warranted in the case:

–   First, the court must determine whether the execution of the warrant violated Rule 41. If the execution of the warrant did not violate Rule 41, the evidence cannot be suppressed on those grounds.

–   Second, if the execution of the search warrant violated Rule 41, the court must determine whether the "breach rose to the level of a Fourth Amendment violation." If the Rule 41 breach does not rise to the level of a Fourth Amendment violation, the evidence will not be suppressed unless the defendant "can prove that he was prejudiced by the error" or that the law enforcement "acted with intentional and deliberate disregard for Rule 41[;]"

–   Third, if the Rule 41 violation occurred and rose to the level of Fourth Amendment violation, the court must determine whether the good-faith exception to the exclusionary rule is applicable to the Rule 41 violation at issue in the case; and

–   Fourth, if the good-faith exception to the exclusionary rule is applicable to the Rule 41 violation at issue, the court must determine whether it precludes suppression in the case.

United States v. Werdene, 883 F.3d 204, 209–10 (3d Cir. 2018).

Rice asserts the same argument with respect to 321 Fifth Avenue, but as the court explained, Rice does not have standing to challenge the search of 321 Fifth Avenue. His challenges to the search warrant for 321 Fifth Avenue are, therefore, not a basis upon which to afford him relief under § 2255. Rice argues that his trial counsel provided him ineffective assistance of counsel because his trial counsel did not fully raise this issue about the sealed attachments with this court and the outcome of this proceeding would have been different if his trial counsel raised this issue with the court. The court will first consider whether Rice was prejudiced by his counsel's allegedly deficient performance. As noted, Rice did not and does not have standing to challenge the search of 321 Fifth Avenue. Under those circumstances, the court need not consider whether Rice was prejudiced by his trial counsel's failure to challenge the particularity of the search warrant for 321 Fifth Avenue.

Rice in this case was charged with and pleaded guilty to:

– count 1: possession with intent to distribute 1 or more marijuana plants on or about November 14, 2017, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii);[12]

– count 2: maintaining a drug-involved premises from on or about January

---

Here, with respect to step two, the court is without sufficient information about the law enforcement officers' culpability to determine whether they acted with intentional disregard for Rule 41, which may implicate the need for an evidentiary hearing. Rice, however, did not make a sufficient showing that he was prejudiced by law enforcement's failure to provide him the complete copy of the search warrant and comply with the particularity requirements of the Fourth Amendment. As explained above, even if the court suppressed the evidence obtained from Rice's person, residence, and vehicle, there existed ample evidence, which was seized from 321 Fifth Avenue, to convict him of the three counts in the indictment to which he pleaded guilty. Under those circumstances, even if law enforcement violated Rule 41 and Rice's counsel's performance was deficient because he failed to raise the issue with the court, Rice is not entitled to relief because he did not show that he was prejudiced by the alleged deficient performance.

[12]     The elements of this offense are: "(1) 'knowing or intentional' (2) 'possession' (3) 'with intent to distribute' of (4) 'a controlled substance.'" United States v. Goldberg, 538 F.3d 280, 287 (3d Cir. 2008), as amended (Nov. 6, 2008) (quoting United States v. Lacy, 446 F.3d 448, 454 (3d Cir.2006)).

1, 2017, and continuing to on or about November 14, 2017, in violation 21
U.S.C. § 856(a)(1);[13] and

   –  count 3: possession of ammunition by a convicted felon on or about
November 14, 2017, in violation of 18 U.S.C. § 922(g)(1).[14]

The government at the change of plea hearing in this case set forth the elements of each

of these offenses and offered the following summary of the evidence it would have relied upon to

convict Rice:

On November 14, 2017, members of the Western District of Pennsylvania
FBI Opioid Task Force executed several search warrants. Those search warrants
were executed at 321 5th Avenue, the surrounding area of 5th Avenue in
McKeesport, as well as 551 Fourth Street in Pitcairn, Mr. Rice's home, as well as
Mr. Rice and his vehicle.

At 321 5th Avenue in McKeesport, the FBI uncovered a sophisticated
marijuana grow operation, which included approximately 348 marijuana plants,
hydroponic materials, facilities, lights, fertilizer, other things used to manufacture
that. Additionally, they found drug packaging material, baggies, stamp bags, and
cut commonly used to mix with heroin or fentanyl in the area. Indicia and mail for
Mr. Rice was found in that location, both at the 321 5th Avenue location and at the
551 Fourth Avenue location in Pitcairn.

---

[13]    The elements of this offense are: "(1) knowingly exercising some degree of control over
the premises; (2) knowingly making the place available for the use alleged in the indictment; and
(3) continuity in pursuing the manufacture, distribution, or use of controlled substances." United
States v. Elmore, 586 F. App'x 559, 561 (11th Cir. 2014) (quoting United States v. Clavis, 956
F.2d 1079, 1090 (11th Cir.1992)).

[14] The elements of this offense are:
(1) that the defendant had previously been convicted of a crime punishable by
imprisonment for a term exceeding one year;

(2) that the defendant knowingly possessed ammunition;

(3) that the defendant knew he had previously been convicted of a crime punishable
by imprisonment for a term exceeding one year when he possessed the ammunition;

(3) that the ammunition had passed in interstate commerce.

Rehaif v. United States, 139 S. Ct. 2191, 2194 (2019); United States v. Wood, No. CR 16-35,
2021 WL 1022693, at *5 (W.D. Pa. Mar. 17, 2021), certificate of appealability denied, No. 21-
1836, 2021 WL 5071873 (3d Cir. Oct. 25, 2021).

The FBI recovered both used and unused ammunition. That ammunition traveled through interstate commerce. No ammunition that was recovered was manufactured in the State of Pennsylvania.[15]

And prior to November 14, 2017, Mr. Rice had been convicted of at least one Pennsylvania state felony.

(H.T. 4/17/2019 (ECF No. 113) at 27-28.) After the government provided the foregoing summary of the evidence and Rice agreed with the court that he committed the foregoing acts, Rice agreed with the court that:

- "on November 14, 2017, [he was] in possession of the approximately 348 marijuana plants at the 5th Avenue address[;]"

- he "had other drug paraphernalia on that site, including some cutting elements for, among other drugs, cocaine[;]"

- he "had some used and unused ammunition at two different locations[;]"

- he "had a prior felony conviction[;]" and

- the ammunition he possessed "traveled in interstate commerce[.]"

(H.T. 4/18/2019 (ECF No. 113) at 28-29.)

The government did not rely upon any evidence obtained from Rice's person or his vehicle in its summary of the evidence. The government in its summary of the evidence relied upon two pieces of evidence obtained from its search of Rice's residence: (1) indicia and mail for Rice; and (2) ammunition. Indicia and mail for Rice and ammunition, however, were also found at 321 Fifth Avenue. Under those circumstances, Rice in his § 2255 motion did not make a sufficient showing that—even if the court suppressed the evidence obtained from Rice's person, residence, and vehicle—he would not have pleaded guilty in this case. See Gagnon v. United States, No. 5:13-CV-08030-CLS, 2015 WL 4598029, at *9 (N.D. Ala. Jan. 16, 2015), report and recommendation

---

[15]   Law enforcement found ammunition in Rice's residence and in 321 Fifth Avenue. (ECF No. 14 at 1-1 ¶ 9; ECF No. 14 at 9-10.)

adopted, No. 5:13-CV-08030-CLS, 2015 WL 4602513 (N.D. Ala. July 29, 2015) (denying a §
2255 motion because the petitioner failed to show he was prejudiced, i.e., he would not have
pleaded guilty; his counsel did not file a motion to suppress evidence obtained from an allegedly
unlawful search warrant because "there was other evidence besides that seized under the search
warrant sufficient to prosecute petitioner").

Here, there was ample evidence upon which to convict Rice of all three counts in the
indictment even without consideration of the evidence obtained from his person, residence, or
vehicle. With respect to counts 1 and 2, i.e., possession with intent to distribute 1 or more marijuana
plants and maintaining a drug-involved premises, CS 1 and CS 2 identified Rice as a marijuana
distributor, CS 1 indicated that Rice used 321 Fifth Avenue to grow marijuana, law enforcement
seized 348 marijuana plants from 321 Fifth Avenue, law enforcement saw Rice exit 321 Fifth
Avenue, a bystander identified 321 Fifth Avenue and Rice's building, and  indicia of Rice's
occupancy of the building was found in that location. With respect to count 2, i.e., maintaining a
drug-involved premises, 321 Fifth Avenue and the 348 marijuana plants seized from that location,
along with drug paraphernalia, formed the basis of that charge and conviction. With respect to
count 3, possession of ammunition by a convicted felon, Rice was a convicted felon, Rice does not
dispute that he knew he was a convicted felon at the time he possessed the ammunition in the case,
law enforcement seized ammunition found inside 321 Fifth Avenue, law enforcement saw Rice
exit 321 Fifth Avenue, and law enforcement was told by CS 1 that Rice utilized 321 Fifth Avenue
for his marijuana grow business.[16] Rice does not argue that his intention to plead guilty was based
only upon the evidence obtained from his person, residence, or vehicle.[17] Rice, therefore, did not

---

[16]    The discussion of evidence here is not an all-inclusive list of the evidence the government
could have relied upon to convicted Rice in this case.

[17]    The issue of inevitable discovery was not raised by the parties. The Supreme Court of the

show that he was prejudiced by his counsel's alleged deficient performance. The § 2255 motion will be denied with respect to this issue.

### D.  Probable Cause to Arrest Him

Rice argues: "[T]he federal government did not have probable cause to arrest and seize [Rice]…on November 14, 2017." (ECF No. 121 at 7.) As argued by the government, this ground for relief is vague and conclusory because Rice does not set forth any other argument or evidence to support it. This court, therefore, may deny the § 2255 motion with respect to this issue without further investigation. Thomas, 221 F.3d at 437. The § 2255 motion will be denied with respect to this issue.

### E.  Rice's Counsel Abandoned his Pretrial Motions

Rice argues that his counsel's performance was deficient when he "abandoned" the

---

United States has explained:

> It is clear that the cases implementing the exclusionary rule "begin with the premise that the challenged evidence is in some sense the product of illegal governmental activity." United States v. Crews, 445 U.S. 463, 471, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980) (emphasis added). Of course, this does not end the inquiry. If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means—here the volunteers' search—then the deterrence rationale has so little basis that the evidence should be received….Anything less would reject logic, experience, and common sense.

Nix v. Williams, 467 U.S. 431, 444 (1984) (footnote omitted). The Third Circuit Court of Appeals recently explained that "[i]nevitability is a high threshold[.]" United States v. Alexander, No. 21-2346, slip op. at 23 (3d Cir. Nov. 30, 2022). Consideration of two factors may be helpful to determine whether the government satisfied its burden: "the likelihood of a warrant issuing, and how far into the application process the government was when its pursuit of a warrant was cut off." Id.

Here, the law enforcement officers were actively investigating Rice and already obtained lawful search warrants for Rice's person, residence, and vehicle. Those search warrants violated the Fourth Amendment only after those documents, including Attachment A and Attachment B, were placed under seal at the government's request. The evidence obtained from Rice's person and residence could have been discovered by lawful means, i.e., by the unsealing of the attachments to those search warrants. The inevitable discovery doctrine exception to the exclusionary rule, therefore, might apply and suppression of the evidence obtained from Rice's person and residence would not be warranted.

motion to file additional pretrial motions (ECF No. 68.) As discussed above, Rice's counsel in

the motion to file additional pretrial motions argued that he wanted to address the following

issues in additional pretrial motions:

> a. Motion to Suppress on the basis that the search of 315 Fifth Avenue, McKeesport, PA 15132 was a warrantless search and no exceptions to the search warrant requirement authorized the search of that location;

> b. Motion to Suppress - Search Warrant on the basis that the affidavit of probable cause filed in support thereof contains material misstatements and misrepresentations of fact including, but not limited to, averments about confidential sources and specific addresses, that render the affidavit devoid of probable cause;

> c. Motion to Suppress - Search Warrant based on the lack of particularity of the search warrant and the fact that the actual search exceeded the scope of the search warrant for the location at 321 Fifth Avenue, McKeesport, PA 15132;

> d. Motion for <u>Franks</u> Hearing to address the material misstatements and misrepresentations of fact that render the affidavits devoid of probable cause;

> e. Motion to Suppress – Search of Mr. Rice's Person based on the illegal search of his person after which keys were seized from him to enter commercial property and unlawfully seize evidence; and

> f. Motion to Suppress – Search Warrant for a violation of Rule 41(f)(3) of the Federal Rules of Criminal Procedure by delaying notice of the search warrant without proper authorization and only serving face sheets of the search warrant[.]

(ECF No. 68 at 3.) Rice's counsel conceded that this court's findings of fact and conclusions of

law addressed those issues, and, therefore, the court denied the motion to file additional pretrial

motions as moot.

This court in the findings of fact and conclusions of law addressed issues a. through e.

and denied the motion to suppress. Rice's counsel, therefore, did not provide ineffective

assistance of counsel by "abandoning" the motion to file additional pretrial motions with respect

to those issues.  The court in the findings of fact and conclusions of law, however, did not

address whether suppression of the evidence was warranted because law enforcement allegedly

did not provide him the attachments to the search warrants for his residence, vehicle, and person. As discussed above, Rice did not satisfy his burden to show that—even if his counsel's performance was deficient because the counsel did not fully argue to this court that the search warrants violated the particularity requirements of the Fourth Amendment—he was prejudiced by the allegedly deficient performance. Under those circumstances, the § 2255 motion will be denied with respect to this issue.

### F.  Rice's Counsel's Alleged Failure to Present Exhibit H to the Court

Rice argues that his counsel's performance was deficient because at the suppression hearing he did not present to the court Exhibit H to the motion to suppress, which was a 9-page document that listed the square footage of and depicted the entrances of 315, 317, and 321 Fifth Avenue, ECF No. 43-8. Rice also argues that the district court failed to take notice of Exhibit H. In response, the government argues that Exhibit H does not depict the address of the second floor of the McKeesport Building, which was accessible to law enforcement from 321 Fifth Avenue, and, in any event, the good faith exception to the exclusionary rule applies in these circumstances.

Rice cannot show that his counsel's performance was deficient with respect to Exhibit H because his counsel attached Exhibit H to the motion to suppress to present it to the court; indeed, the court reviewed and relied upon Exhibit H in the findings of fact and conclusions of law to find that the McKeesport Building had three separate addresses. (ECF No. 72 ¶ FOF 1 (citing ECF No. 43-8).) At the suppression hearing, Rice's counsel argued to the court that the McKeesport Building was comprised of three separate addresses. (H.T. 11/29/2018 (ECF No. 54) at 6, 8, 48-51.) Under those circumstances, Rice's counsel's performance was not deficient.

Rice cannot show that he was prejudiced by his counsel's allegedly deficient performance because although Exhibit H lists the square footage of and depicted the entrances of 315, 317,

and 321 Fifth Avenue, it does not provide for the address of the second floor, which was accessed by law enforcement via the 321 Fifth Avenue entrance. The Third Circuit Court of Appeals affirmed this court's finding that law enforcement searched 321 Fifth Avenue, and, even if the search warrant issued for 321 Fifth Avenue was invalid, the evidence obtained from the search of 321 Fifth Avenue "is admissible under the good faith exception to the exclusionary rule." (ECF No. 100-2 at 5.) The court of appeals explained:

> Even if a public records search would have revealed that the building contained three separate addresses, as Rice contends, a failure to fully investigate is "not evidence of an affiant's reckless disregard for the truth." United States v. Brown, 631 F.3d 638, 648 (3d Cir. 2011) (quoting United States v. Dale, 991 F.2d 819, 844 (D.C. Cir. 1993)).

Id. Based upon the foregoing, Rice did not show that his counsel's performance with respect to Exhibit H was deficient or that he was prejudiced by his counsel's performance with respect to Exhibit H. The § 2255 motion will be denied with respect to this issue.

## V.    Conclusion

Rice's § 2255 motion will be denied because he did not make a sufficient showing that he is entitled to relief.

## VI.    Certificate of Appealability

When a district court issues a final order denying a § 2255 motion, the court must also make a determination about whether a certificate of appealability ("COA") should issue or the clerk of the court of appeals shall remand the case to the district court for a prompt determination about whether a certificate should issue. See 3d Cir. LAR. 22.2.

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

Slack v McDaniel, 529 U.S. 473, 484-85 (2000).

Based upon the motion, files, and records of the instant case, and for the reasons set forth above, the court finds that Rice did not show a valid claim of the denial of a constitutional right. A COA will not issue.

An appropriate order will be entered.

**IT IS SO ORDERED.**

Dated:          December 16, 2022          **/s/ JOY FLOWERS CONTI**
Joy Flowers Conti
Senior United States District Court Judge

cc:     LAMAR RICE
        USMS 38733-068
        551 Fourth Street
        Pittsburgh, PA 15140