IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Criminal Action No. 17-338 |
| v. | ) |
| | ) |
| | ) |
| LAMAR RICE, | ) |
|         Defendant. | ) |

**MEMORANDUM OPINION**

Pending before the court is a pro se motion to modify or rescind conditions of supervised release (ECF No. 131) filed by defendant Lamar Rice ("Rice" or "defendant"). Rice requests permission from the court to use Delta-8 and Delta-10 products made from hemp to treat his stage 3 arthritis and the beginnings of a bulging cartilage disk in his lower back. Rice avers that he suffers debilitating pain since being injured in a slip and fall accident on the job. Rice did not provide any documentation of his injury and he admits that his treating physician will not prescribe pain medication for him (ECF No. 131 at 2). Rice did not submit any medical records to the court.

Rice argues that Delta-8 and Delta-10 products were legalized in the 2018 Agricultural Improvement Act and are the only effective pain medication for him. Rice recognizes that use of Delta-8 and Delta-10 products invariably cause a positive urinalysis, which puts him in violation of the conditions of supervised release. The government opposes Rice's request and argues, among other things, that Rice failed to provide sufficient evidence to support his request and that this court is without authority to permit Rice to violate federal law. Rice's motion is ripe for decision.

Procedural History

Rice's underlying crimes of conviction involved a "sophisticated marijuana grow operation." Presentence Report ¶ 18 (ECF No. 88). On April 18, 2019, pursuant to a plea agreement, Rice pleaded guilty to counts 1, 2 and 3 of the indictment, which charged him with:

- count 1: possession with intent to distribute 1 or more marijuana plants on or about November 14, 2017, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii);

- count 2: maintaining a drug-involved premises from on or about January 1, 2017, and continuing to on or about November 14, 2017, in violation 21 U.S.C. § 856(a)(1); and

- count 3: possession of ammunition by a convicted felon on or about November 14, 2017, in violation of 18 U.S.C. § 922(g)(1).

On August 8, 2019, the court sentenced Rice to a term of imprisonment of 60 months at each count, to concurrently run, for a total term of imprisonment of 60 months. The court also imposed a total term of supervised release of 4 years. (ECF No. 95). The court imposed conditions of supervised release, including (as relevant to the pending motion) the conditions that Rice: (1) is prohibited from committing another federal, state, or local crime; and (2) shall participate in a program of testing and, if necessary, treatment for substance abuse, said program to approved by the probation officer, until such time as the defendant is released from the program by the court. (Id. at 3, 5; 18 U.S.C. § 3583(d)). The Third Circuit Court of Appeals affirmed Rice's conviction and sentence (ECF No. 100).

Rice was released from the custody of the Bureau of Prisons and commenced his term of supervised release on May 23, 2022, less than one year ago. On June 16, 2022, the probation office reported that Rice admitted violating his conditions of supervision by ingesting a marijuana edible (ECF No. 122). On December 16, 2022, the probation office reported that Rice submitted marijuana-positive drug screens in July, September, October and November, 2022

(ECF No. 129). Rice originally denied marijuana use, but then admitted he used marijuana to alleviate back pain. On January 11, 2023, Rice filed the pending motion to modify the conditions of his supervised release (ECF No. 131.) On April 5, 2023, the probation office reported that Rice submitted marijuana-positive drug tests on four occasions in February and March, 2023 (ECF No. 132). Rice denied marijuana use, but admitted to use of over-the-counter CBD products. The national lab confirmed the use of marijuana. Rice agreed to reengage in treatment and stop all use of over-the-counter products. *Id.*

Discussion

Pursuant to 18 U.S.C. § 3583(d), the court must impose a mandatory condition of supervised release that the defendant not commit another federal, state, or local crime. Rice is subject to that condition. The possession of marijuana, with one limited exception, is a federal crime. 21 U.S.C. §§ 812(c) and 844(a); *Gonzales v. Raich*, 545 U.S. 1, 14 (2005) ("By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the manufacture, distribution, or possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration preapproved research study."). The Third Circuit Court of Appeals explained: "[I]t is beyond dispute that the use and possession of marijuana—even where sanctioned by a State—remains a violation of federal law." *United States v. Cannon*, 36 F.4th 496, 498 (3d Cir. 2022).

The federal law prohibiting the possession of marijuana conflicts with, and supersedes, Pennsylvania law permitting the use of medical marijuana, 35 Pa. Cons. Stat. §§ 10231.101–.2110. The Supreme Court of the United States has explained: "The Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law

shall prevail." *Gonzales*, 545 U.S. at 29. This court is without authority to permit Rice to violate federal law; indeed, the court of appeals in *Cannon* explained:

> [U]se of marijuana for medical purposes, even where sanctioned by state law, remains a violation of federal law for purposes of § 3142(b), and **a District Court may not disregard that violation when deciding if a defendant has complied with the terms of their release.**

*Cannon*, 36 F.4th at 500 (emphasis added); *Mitchell-Yarbrough*, 2021 WL 3738911, at *8 (explaining that despite "differing conclusions on how to manage Defendants using medical marijuana on supervised release,…there has been general uniformity…[that a] Court cannot…modify the mandatory conditions of a Defendant's [ ] release to permit him to violate federal law by using medical marijuana.") (collecting decisions).

Rice's argument is somewhat more nuanced. He concedes that he is not permitted to use marijuana, but contends that products derived from hemp (such as Delta-8 and Delta-10) are not marijuana and are no longer illegal controlled substances. Rice is correct that in the 2018 Farm Act, the Controlled Substances Act was amended to exclude "hemp" from the definition of marijuana. *See* Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018 (2018). *United States v. Rivera*, No. 21-3044, 2022 WL 4533837, at *1 (3d Cir. Sept. 28, 2022) (concluding the redefinition did not justify a sentence reduction). The definition now reads:

> (16)(A) Subject to subparagraph (B), the terms "marihuana" and "marijuana" mean all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.
>
> (B) The terms "marihuana" and "marijuana" do not include—
>
>   (i) hemp, as defined in section 1639o of Title 7; or
>
>   (ii) the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature

>   stalks (except the resin extracted therefrom), fiber, oil, or cake, or the
>   sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16).

The term "hemp" is defined in 7 U.S.C. § 1639o to mean: "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." *See generally, Duke's Invs. LLC v. Char*, No. CV 22-00385, 2023 WL 3166729, at *1 (D. Haw. Apr. 28, 2023) (providing an overview of the United States' drug enforcement regime, the 2018 Farm Act and Delta-8 and Delta-10).

The exclusion of "hemp" from the definition of "marijuana" does not resolve the legality of Rice's use of Delta-8 or Delta-10. The question becomes whether those substances fall within the definition of "hemp." The court takes judicial notice that on February 13, 2023, the United States Drug Enforcement Administration ("DEA") issued a letter, in response to an inquiry, concluding that Delta-8 and Delta-9 continued to be controlled substances, available at: https://assets.law360news.com/1575000/1575939/dea-%20thco%20response%20to%20kight.pdf, last visited May 4, 2023. The DEA explained that because Delta-8 and Delta-9 do not occur naturally and can only be obtained synthetically, those substances do not fall within the definition of "hemp." The substances meet the definition of tetrahydrocannabinols, with Controlled Substances Code Number (CSCN) 7370. The regulations define Tetrahydrocannabinols (CSCN 7370) as follows:

>   (31) (i) Meaning tetrahydrocannabinols, except as in paragraph (d)(31)(ii) of this section, naturally contained in a plant of the genus Cannabis (cannabis plant), as well as synthetic equivalents of the substances contained in the cannabis plant, or in the resinous extractives of such plant, and/or synthetic substances, derivatives,

and their isomers with similar chemical structure and pharmacological activity to those substances contained in the plant, such as the following:

1 cis or trans tetrahydrocannabinol, and their optical isomers

6 cis or trans tetrahydrocannabinol, and their optical isomers

3, 4 cis or trans tetrahydrocannabinol, and its optical isomers

(Since nomenclature of these substances is not internationally standardized, compounds of these structures, regardless of numerical designation of atomic positions covered.)

(ii) Tetrahydrocannabinols does not include any material, compound, mixture, or preparation that falls within the definition of hemp set forth in 7 U.S.C. 1639o.

21 C.F.R. § 1308.11. In other words, according to the DEA, Delta-8 and Delta-9 are not "hemp."

In short, Delta-8 remains a controlled substance. Although Delta-10 was not directly referenced in the DEA's letter, there is no basis (in the record before the court) to believe that the DEA will treat Delta-10 in a different manner. It is Rice's burden to provide that information. *See United States v. Hlavac*, No. 2:05-CR-200-NR, 2022 WL 4553133, at *1 (W.D. Pa. Sept. 29, 2022) ("The proponent of a supervised release modification must provide the court with sufficient information to warrant modification of the terms of supervised release.") (citing *United States v. Davies*, 746 F. App'x 86, 89 (3d Cir. 2018)). It is illegal under federal law, therefore, for Rice to possess or use Delta-8 or Delta-10. This court lacks authority to modify the conditions of Rice's supervised release to allow him to violate federal law.

In any event, effective substance abuse testing and treatment is important to provide Rice with effective treatment and oversight. Rice failed to provide sufficient documentation to support his request. Indeed, he concedes that his doctor will not prescribe pain medication for his conditions. Based upon the foregoing, Rice's motion to modify the conditions of his

supervised release to permit the use of hemp-derived products such as Delta-8 and Delta-10 will be denied.

Conclusion

Rice's motion to modify conditions of supervised release (ECF No. 131) will be denied.

An appropriate order will be entered.

**BY THE COURT**,

Dated: June 20, 2023

**/s/ JOY FLOWERS CONTI**
Joy Flowers Conti
Senior United States District Court Judge